## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; and CHARLES A. WHOBREY, as Trustee, | ) ) ) ) | |
| *Plaintiffs,* | ) ) | Case No. 26-cv-3543 |
| v. | ) ) | Judge |
| CRAMBLETT LAND COMPANY, LLC, an Ohio limited liability company; and KATHRYN HUTSON, an individual, | ) ) ) ) | Magistrate Judge |
| *Defendants.* | ) ) | |

## COMPLAINT

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund (the "Pension Fund") and Charles A. Whobrey, one of its present trustees, for causes of action against Defendants allege as follows:

### JURISDICTION AND VENUE

1. This is an action for collection of withdrawal liability, interest, and penalties incurred by an employer as a result of a withdrawal from a multiemployer pension plan.

2. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 *et seq*. This Court has jurisdiction over this action under 29 U.S.C. §§ 1132(e), 1132(f) and 1451(c).

3. Venue lies in this Court under 29 U.S.C. §§ 1132(e)(2) and 1451(d) because the Pension Fund is administered at its principal place of business in Chicago, Illinois.

**PARTIES**

4.     The Pension Fund is a multiemployer pension plan within the meaning of 29 U.S.C. §§ 1002(37) and 1301(a)(3).

5.     Plaintiff Charles A. Whobrey is a present trustee and fiduciary of the Pension Fund within the meaning of 29 U.S.C. § 1002(21)(A), and he and his fellow trustees are the plan sponsor of the Pension Fund within the meaning of 29 U.S.C. § 1301(a)(10). The trustees administer the Pension Fund at 8647 West Higgins Road, Chicago, Illinois.

6.     Pursuant to 29 U.S.C. §§ 1132(a)(3) and 1451(a)(1), the Trustees, by and through their designated trustee Charles A. Whobrey, are authorized to bring this action on behalf of the Pension Fund, its participants, and its beneficiaries for the purpose of collecting withdrawal liability.

7.     Defendant Cramblett Land Company, LLC ("Cramblett Land Co.") is a limited liability company organized under the laws of the State of Ohio.

8.     Defendant Kathryn Hutson is an individual who resides in Ohio and is the registered agent of Defendant Cramblett Land Co.

**FACTUAL BACKGROUND**

A.     **The Withdrawal, the Withdrawal Liability, and the Lawsuit Against Cramblett Trucking**

9.     Non-party Cramblett Trucking, Inc. ("Cramblett Trucking") is a corporation organized under the laws of the State of Ohio.

10.     During relevant times, Cramblett Trucking was bound by collective bargaining agreements with a certain local union affiliated with the International Brotherhood of Teamsters under which Cramblett Trucking was required to make contributions to the Pension Fund on behalf of certain of its employees.

11. On or about December 31, 2019, Cramblett Trucking and all trades or businesses under common control with Cramblett Trucking on that date (the "Cramblett Trucking Controlled Group"), including but not limited to all trades or businesses that would have been under common control with Cramblett Trucking on that date but for transactions voidable under 29 U.S.C. § 1392(c), constituted a single employer within the meaning of 29 U.S.C. § 1301(b)(1) and the regulations promulgated thereunder.

12. The Cramblett Trucking Controlled Group is the "employer" for purposes of the determination and assessment of withdrawal liability under Title IV of ERISA.

13. The Pension Fund determined that on or about December 31, 2019, the Cramblett Trucking Controlled Group permanently ceased to have an obligation to contribute to the Pension Fund and/or permanently ceased all covered operations, thereby effecting a "complete withdrawal" from the Pension Fund within the meaning of 29 U.S.C. § 1383 (the "Withdrawal").

14. As a result of the Withdrawal, the Pension Fund determined that the Cramblett Trucking Controlled Group incurred joint and several withdrawal liability to the Pension Fund in the principal amount of $3,350,501.91, as determined under 29 U.S.C. § 1381(b) (the "Withdrawal Liability").

15. On or about March 19, 2020, the Cramblett Trucking Controlled Group, through James Cramblett Jr. (who was then president of Cramblett Trucking), received a notice and demand for payment of the Withdrawal Liability issued by the Pension Fund in accordance with 29 U.S.C. §§ 1382(2) and 1399(b)(1) (the "Notice and Demand"). The Notice and Demand required payment of the Withdrawal Liability by April 1, 2020.

16. The Cramblett Trucking Controlled Group failed to remit the Withdrawal Liability payment (or any portion thereof) to the Pension Fund.

17. No member of the Cramblett Trucking Controlled Group initiated arbitration pursuant to 29 U.S.C § 1401(a). Consequently, the amount demanded by the Pension Fund is due and owing pursuant to 29 U.S.C. § 1401(b)(1).

18. On August 31, 2020, the Pension Fund filed a lawsuit against Cramblett Trucking in the United States District Court for the Northern District of Illinois in a case styled *Central States, Southeast and Southwest Areas Pension Fund, et al. v. Cramblett Trucking, Inc., et al.*, Case No. 20-cv-5113, to collect the Withdrawal Liability, plus interest and statutory damages (the "Lawsuit"). On October 22, 2020, the court entered a judgment (the "Judgment") in favor of the Pension Fund and against Cramblett Trucking in the total amount of $4,123,123.81, plus post-judgment interest.

19. Following entry of the Judgment, the Pension Fund issued a Citation to Discover Assets (the "Citation") to Cramblett Trucking under Federal Rule of Civil Procedure 69 and 735 ILCS 5/2-1402, pursuant to which the Pension Fund received and reviewed certain financial records and conducted a deposition of Defendant Kathryn Hutson as representative of Cramblett Trucking.

20. As a result of the Citation, the Pension Fund identified funds held in a Cramblett Trucking bank account, which ultimately resulted in the Pension Fund garnishing and receiving $30,842.79, all of which the Pension Fund applied to the interest that had accrued on the Judgment. The Pension Fund also received $30,094.56 in connection with an insurance policy held by Cramblett Trucking, all of which the Pension Fund applied to the interest that had accrued on the Judgment. Other than the amounts described in this paragraph, the Pension Fund has received no monies on account of the Withdrawal Liability or the Judgment.

**B.** **The Transfer of Assets of and Ownership in Defendant Cramblett Land Co.**

**i.** **Cramblett Trucking's Ownership, Operations, and Decline in Business**

21.     Non-party James Cramblett Jr. is a deceased individual who passed away in January 2023 and was Defendant Kathryn Hutson's brother.

22.     From before January 1, 2016 through and after December 31, 2019, James Cramblett Jr. was the president of Cramblett Trucking and directly or indirectly owned at least 80% of the total combined voting power of all classes of outstanding stock entitled to vote and/or at least 80% of the total value of outstanding shares of all classes of stock of Cramblett Trucking.

23.     From before January 1, 2016 through and after December 31, 2019, Defendant Kathryn Hutson was the vice president of Cramblett Trucking and directly or indirectly owned the remaining combined voting power of all classes of outstanding stock entitled to vote and/or the remaining total value of outstanding shares of all classes of stock of Cramblett Trucking.

24.     At all relevant times through December 31, 2019, Cramblett Trucking's operations primarily consisted of hauling coal for use in power generation.

25.     Starting in or before 2014, Cramblett Trucking faced a decline in business as demand for its coal hauling services waned. In each year from 2014 through 2018, Cramblett Trucking experienced a net loss. Then, in 2019, Cramblett Trucking ceased operating and liquidated substantially all its assets, triggering the complete withdrawal discussed above.

**ii.** **Cramblett Trucking's, James Cramblett Jr.'s, and Defendant Kathryn Hutson's Knowledge of Potential Withdrawal Liability.**

26.     During the period of 2014 through 2018, Cramblett Trucking began asking the Pension Fund for estimates of the amount it would owe in withdrawal liability if it were to withdraw. Specifically, Cramblett Trucking's counsel requested such estimates via letters and/or

emails dated March 6, 2014, August 25, 2014, May 10, 2016, January 11, 2017, and January 2, 2018.

27.     In her capacity as vice president of Cramblett Trucking, Defendant Kathryn Hutson submitted to the Pension Fund a signed authorization dated March 3, 2014 permitting the disclosure of the requested withdrawal liability estimates to Cramblett Trucking's counsel.

28.     By emailed letters dated March 6, 2014, September 22, 2014, May 12, 2016, January 23, 2017, and January 4, 2018, the Pension Fund provided estimates of potential withdrawal liability to Cramblett Trucking's counsel in response to the requests described above. Each of the emailed letters from the Pension Fund contained the following statement: "For purposes of withdrawal liability, ERISA Section 4001(b) [29 U.S.C. § 1301(b)] defines the term employer to include all trades or businesses, whether or not incorporated, which are under common control within the meaning of the applicable sections of the Internal Revenue Code."

29.     In its March 6, 2014 estimate, the Pension Fund estimated that the amount of the Cramblett Trucking Controlled Group's withdrawal liability for a hypothetical 2013 complete withdrawal would have been in the principal amount of $1,454,633.31, which amount was greater than the value of Cramblett Trucking's assets at that time.

30.     In its September 22, 2014 estimate, the Pension Fund estimated that the amount of the Cramblett Trucking Controlled Group's withdrawal liability for a hypothetical 2014 complete withdrawal would have been in the principal amount of $1,584,440.19, which amount was greater than the value of the Cramblett Trucking Controlled Group's assets at that time.

31.     In its May 12, 2016 estimate, the Pension Fund estimated that the amount of the Cramblett Trucking Controlled Group's withdrawal liability for a hypothetical 2015 complete

withdrawal would have been in the principal amount of $1,700,273.65, which amount was greater than the value of the Cramblett Trucking Controlled Group's assets at that time.

32. In its January 23, 2017 estimate, the Pension Fund estimated that the amount of the Cramblett Trucking Controlled Group's withdrawal liability for a hypothetical 2016 complete withdrawal would have been in the principal amount of $2,135,716.93, which amount was greater than the value of the Cramblett Trucking Controlled Group's assets at that time.

33. Upon information and belief, James Cramblett Jr. and Defendant Kathryn Hutson both viewed each of the withdrawal liability estimates described in paragraph 28 shortly after they were sent by the Pension Fund, including without limitation, the January 23, 2017 withdrawal liability which was viewed by James Cramblett Jr. and Defendant Kathryn Hutson shortly after the Pension Fund sent it, but in any event no later than in March 2017.

34. As established by the allegations in paragraphs 26 through 33 above, Cramblett Trucking, James Cramblett Jr., and Defendant Kathryn Hutson were each aware that Cramblett Trucking and its controlled group would incur withdrawal liability if Cramblett Trucking withdrew from the Pension Fund.

**iii.     The Ownership and Operations of Defendant Cramblett Land Co.**

35. Defendant Cramblett Land Co. has been a formally organized limited liability company from May 6, 2013 through the present, including on December 31, 2019, the date of the Withdrawal described above.

36. From May 6, 2013 through May 8, 2017, James Cramblett Jr. and Defendant Kathryn Hutson were the only two members of Defendant Cramblett Land Co., each directly or indirectly owning 50% of the ownership interests of Cramblett Land Co.

37. From May 6, 2013 through the present, Defendant Kathryn Hutson has been the registered agent of Defendant Cramblett Land Co.

38.     At all relevant times through December 31, 2019, Defendant Cramblett Land Co. owned the real estate at 2322 Avalon Road, Carrollton, Ohio, leased that real estate to Cramblett Trucking, and charged Cramblett Trucking rent to use that parcel as its principal place of operations.

39.     In addition to leasing property to Cramblett Trucking for use in its operations, at all relevant times through December 31, 2019, Defendant Cramblett Land Co. also operated a working farm, which raised crops and livestock for sale.

40.     Additionally, in 2016 Defendant Cramblett Land Co. entered into a mineral rights leasing agreement with Enervest Operating LLC (the "Oil Agreement"). Pursuant to the Oil Agreement, Defendant Cramblett Land Co. received a single lump sum payment of approximately $928,000.00 in 2016 in exchange for permitting extraction of oil underneath the property at 2322 Avalon Road.

41.     As established by the allegations in paragraphs 35 through 40, Defendant Cramblett Land Co. is a "trade or business" within the meaning of 29 U.S.C. § 1301(b)(1).

42.     The proceeds of the Oil Agreement were distributed to Defendant Kathryn Hutson (and to James Cramblett Jr.). Specifically, in 2016, Defendant Kathryn Hutson received a distribution of at least $401,237.00 from Defendant Cramblett Land Co. (the "Oil Distribution"). Upon information and belief, the Oil Distribution (and the similar distribution to James Cramblett Jr.) were authorized and directed by Defendant Kathryn Hutson and/or James Cramblett Jr.

**iv.     The Transfer of Defendant Cramblett Land Co. Ownership**

43.     Prior to May 9, 2017, Cramblett Trucking and Defendant Cramblett Land Co. were a group of trades or businesses under common control within the meaning of 29 U.S.C. § 1301(b)(1). That is, the same five or fewer individuals owned 80% or more of the ownership interests of each company.

44. Specifically, and as explained above, from before January 1, 2016 through and after December 31, 2019 (the withdrawal date), James Cramblett Jr. owned at least 80% of the ownership interests of Cramblett Trucking and Defendant Kathryn Hutson owned the remaining ownership interests.

45. Furthermore, and as explained above, from May 6, 2013 through May 8, 2017, James Cramblett Jr. owned 50% of the ownership interests of Defendant Cramblett Land Co. and Defendant Kathryn Hutson owned the remaining 50%.

46. On or about May 9, 2017, James Cramblett Jr. transferred his entire 50% interest in Defendant Cramblett Land Co. to his daughter, Jennifer E. Baker, for no consideration (the "Transfer to Cramblett's Daughter").

47. Also, on or about May 9, 2017, Defendant Kathryn Hutson transferred her entire 50% ownership in Defendant Cramblett Land Co. to her daughter, Laura E. Warner, for no consideration (the "Transfer to Hutson's Daughter" and, together with the Transfer to Cramblett's Daughter, the "Transfers").

48. Following the Transfers and at all relevant times thereafter (including on the December 31, 2019 date of withdrawal), Jennifer E. Baker and Laura E. Warner have each owned 50% of the ownership interests of Defendant Cramblett Land Co.

## COUNT I
## FOR WITHDRAWAL LIABILITY AGAINST CRAMBLETT LAND COMPANY LLC
## AS A MEMBER OF THE CRAMBLETT TRUCKING CONTROLLED GROUP

49. Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 48 of this Complaint as though fully set forth herein.

50. 29 U.S.C. § 1392(c) provides that a transaction is to be disregarded if a principal purpose of such transaction is to evade or avoid withdrawal liability.

51.     From its formation on May 6, 2013 through present, Defendant Cramblett Land Co. has been a trade or business within the meaning of 29 U.S.C. § 1301(b)(1).

52.     From its formation on May 6, 2013 through May 8, 2017, Defendant Cramblett Land Co. was under common control with Cramblett Trucking within the meaning of 29 U.S.C. § 1301(b)(1) and the related regulations.

53.     The May 9, 2017 Transfers had the effect of breaking the common control between Defendant Cramblett Land Co. and Cramblett Trucking, as after the Transfers the same five or fewer individuals no longer collectively owned 80% or more of the ownership interests of both Cramblett Trucking and Defendant Cramblett Land Co.

54.     As shown in paragraphs 25 through 34 above, prior to making the Transfers for no consideration, James Cramblett Jr. and Defendant Kathryn Hutson were each aware that: Cramblett Trucking's business was declining; if Cramblett Trucking shut down it would incur withdrawal liability; this withdrawal liability would be joint and several among all members of the Cramblett Trucking Controlled Group, including Defendant Cramblett Land Co.; and that the amount of withdrawal liability would exceed the value of the Cramblett Trucking Controlled Group's assets.

55.     Accordingly, and upon information and belief, the withdrawal liability weighed heavily on James Cramblett Jr.'s and Defendant Kathryn Hutson's minds when they transferred the ownership of Defendant Cramblett Land Co. for no consideration. In other words, evading or avoiding withdrawal liability was a principal purpose of the Transfers.

56.     Pursuant to 29 U.S.C. § 1392(c), the Transfers are thus to be disregarded in determining and collecting the Withdrawal Liability. Therefore, Defendant Cramblett Land Co. is deemed to be a trade or business under common control with Cramblett Trucking on the date of

withdrawal (December 31, 2019) within the meaning of 29 U.S.C. § 1301(b)(1) and the regulations promulgated thereunder, meaning it is jointly and severally liable for the Withdrawal Liability as a member of the Cramblett Trucking Controlled Group.

57. As of May 9, 2017 (the date of the Transfers), Defendant Cramblett Land Co. had actual notice of the Cramblett Trucking Controlled Group's potential withdrawal liability to the Pension Fund, including, without limitation, by virtue of: Defendant Kathryn Hutson's receipt of the Pension Fund's estimates of withdrawal liability, which stated that all trades or businesses under common control with Cramblett Trucking would be jointly and severally liable for the withdrawal liability; and Kathryn Hutson's signed authorization dated March 3, 2014 permitting the disclosure of the Pension Fund's withdrawal liability estimates to Cramblett Trucking's counsel.

58. Defendant Cramblett Land Co. also had actual notice of the Withdrawal Liability through Defendant Kathryn Hutson.

59. For example, when Cramblett Trucking received the Notice and Demand on March 19, 2020 (and at all relevant times thereafter), Defendant Kathryn Hutson was the vice president of Cramblett Trucking and the registered agent of Defendant Cramblett Land Co. She is also the sister of James Cramblett Jr., who was the president of Cramblett Trucking until his death in January 2023.

60. Additionally, and upon information and belief, while the earlier withdrawal liability Lawsuit was pending, Defendant Kathryn Hutson was aware of the Lawsuit, as well as the fact that the Pension Fund asserts that all trades or businesses under common control with Cramblett Trucking as of the withdrawal date (December 31, 2019) are jointly and severally liable for the Withdrawal Liability.

61.     Further, Defendant Cramblett Land Co. also had actual notice of the Withdrawal Liability by no later than May 3, 2023 by virtue of the Citation described in paragraph 19 above, as Defendant Kathryn Hutson testified as a representative of Cramblett Trucking on May 3, 2023 in the Citation proceedings.

62.     Defendant Cramblett Land Co. and the Cramblett Controlled Group more generally did not timely initiate arbitration pursuant to 29 U.S.C § 1401(a) with respect to the Withdrawal Liability. Consequently, the amounts demanded by the Pension Fund are due and owing from Defendant Cramblett Land Co. pursuant to 29 U.S.C. § 1401(b)(1).

**WHEREFORE**, Plaintiffs request the following relief:

(a)     A judgment against Defendant Cramblett Land Co., LLC and in favor of Plaintiffs, pursuant to 29 U.S.C. §§ 1132(g)(2) and 1451(b), for:

(i)     $3,350,501.91 in withdrawal liability;

(ii)    interest computed and charged at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged;

(iii)   an amount equal to the greater of interest on the past due withdrawal liability payments or liquidated damages of 20% of the past due withdrawal liability payments; and

(iv)    attorneys' fees and costs.

(b)     Post-judgment interest computed and charged on the entire judgment at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by

JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged, compounded annually; and

(c)     Such further or different relief as this Court may deem proper and just.

## COUNT II
### FOR WITHDRAWAL LIABILITY AGAINST KATHRYN HUTSON IN CONNECTION WITH THE OIL DISTRIBUTION

63.     Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 62 of this Complaint as though fully set forth herein.

64.     As stated above, 29 U.S.C. § 1392(c) provides that a transaction is to be disregarded if a principal purpose of such transaction is to evade or avoid withdrawal liability.

65.     The Oil Distribution had the effect of removing proceeds of the Oil Agreement from the Cramblett Trucking Controlled Group, significantly reducing the amount of assets that would be available to satisfy withdrawal liability.

66.     As shown in paragraphs 25 through 34 above, prior to the Oil Distribution, James Cramblett Jr., and Defendant Kathryn Hutson were aware that: Cramblett Trucking's business was declining; if Cramblett Trucking shut down it would incur withdrawal liability; this withdrawal liability would be joint and several among all members of the Cramblett Trucking Controlled Group, including Defendant Cramblett Land Co.; and the amount of withdrawal liability would likely exceed the value of the Cramblett Trucking Controlled Group's assets.

67.     Accordingly, and upon information and belief, the withdrawal liability weighed heavily on James Cramblett Jr.'s and Defendant Kathryn Hutson's minds when they made the Oil Distribution to Defendant Kathryn Hutson.

68.     As the above facts show, a principal purpose behind the Oil Distribution was to evade or avoid the payment of withdrawal liability to the Pension Fund by removing the Oil

Agreement proceeds from the possession of a controlled group member (Defendant Cramblett Land Co.).

69.     Accordingly, under 29 U.S.C. § 1392(c), the Oil Distribution should be disregarded. As a result, Defendant Kathryn Hutson should be held liable to the Pension Fund for all amounts transferred to her through the Oil Distribution.

**WHEREFORE**, Plaintiffs request the following relief:

(a)     A judgment against Defendant Kathryn Hutson and in favor of Plaintiffs, pursuant to 29 U.S.C. §§ 1132(g)(2) and 1451(b), for:

      (i)     $3,350,501.91 in withdrawal liability or the total amount that Defendant Cramblett Land Co. improperly transferred to Defendant Kathryn Hutson, whichever is less;

      (ii)    interest computed and charged at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged;

      (iii)   an amount equal to the greater of interest on the past due withdrawal liability payments or liquidated damages of 20% of the past due withdrawal liability payments; and

      (iv)    attorneys' fees and costs.

(b)     That this Court impose a constructive trust on all funds and assets that Defendant Cramblett Land Co. improperly transferred to Defendant Kathryn Hutson, on any property purchased using said funds, and on any monies obtained in exchange for such assets

(c) Post-judgment interest computed and charged on the entire judgment at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged, compounded annually; and

(d) Such further or different relief as this Court may deem proper and just.

Respectfully submitted,

*/s/ Daniel Sullivan*
Daniel E. Sullivan (IL #6330522)
Central States Funds, Law Department
8647 W. Higgins Road, 8th Floor
Chicago, IL 60631-2803
(847) 582-5078
dsulliva@centralstatesfunds.org

March 31, 2026                    *ATTORNEY FOR PLAINTIFFS*